1998 ME 135

Gary **MOEN**

v.

**TOWN OF FAIRFIELD.**

Supreme Judicial Court of Maine.

Argued March 4, 1998.

Decided June 3, 1998.

Howard T. Reben (orally), Sunenblick, Reben, Benjamin and March, Portland, for plaintiff.

Robert M. Hayes (orally), Linda D. McGill, Moon, Moss, McGill, Hayes & Shapiro, P.A., Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, LIPEZ, and SAUFLEY, JJ.

SAUFLEY, Justice.

[¶ 1] Gary Moen appeals from a summary judgment entered in the Superior Court (Kennebec County, *Kravchuk, J.*) in favor of the Town of Fairfield.[1] On appeal, Moen argues that the existence of genuine issues of material fact precluded judgment against him on his claims that he was denied a meaningful opportunity to be heard prior to being terminated from the Town's police department, and that he was terminated for engaging in speech protected by the First Amendment. We affirm the judgment.

[¶ 2] In October 1991, Chief John F. Pouliot of the Fairfield Police Department promoted Gary Moen to the position of patrol sergeant. At the time, Moen was also shop steward for the members of Teamsters Local # 340 employed within the department. As patrol sergeant, Moen was responsible for sixteen or seventeen patrol officers. Pouliot relied upon Moen to foster loyalty and discipline among the patrol officers, carry out Pouliot's orders and assure that the patrol officers also carried out those orders, and keep their discussions concerning police department business confidential. Pouliot also considered it essential that he have confidence in Moen's willingness and ability to carry out his orders on behalf of the department.

[¶ 3] At some point during 1992, Moen began secretly taping his conversations with Pouliot because Moen distrusted him and wanted to preserve an accurate record of their conversations for future grievance proceedings and other possible legal actions. Moen played these taped conversations for other officers and for individuals outside the department. Moen also encouraged the other officers to tape their conversations with Pouliot secretly. Four of those officers ultimately responded to Moen's encouragement. The resulting tape recordings were later presented as evidence in Maine Labor Relations Board proceedings concerning possible Maine Labor Relations Act violations by the Town. The MLRB ultimately found that the Town had unlawfully interfered with the rights of its union employees in violation of 26 M.R.S.A. § 964(1)(A) (1988).[2]

[¶ 4] When Pouliot discovered that Moen had been secretly taping their private conversations, he met with Moen, notified him of

---

1. Although Teamsters Union Local # 340 was a named plaintiff in this case both at trial and on appeal, Local # 340 lacks standing to assert Moen's constitutional claims. *See Common Cause v. State*, 455 A.2d 1, 6 (Me.1983) ("The general rule is that a litigant may not assert the constitutional rights of third parties."). Because only Moen's constitutional claims are at issue before this Court, Local # 340 is not a proper party to this appeal.

2. Pursuant to 26 M.R.S.A. § 964(1)(A), public employers, their representatives, and their agents are prohibited from interfering with, restraining, or coercing employees in the exercise of the rights guaranteed in section 963. Those guaranteed rights include the right to join, form, and participate in labor organizations for the purposes of representation and collective bargaining. *See* 26 M.R.S.A. § 963 (1988).

the discovery, and placed him on administrative leave with pay pending an investigation. During his investigation of Moen's conduct, Pouliot learned that Moen had played the taped conversations for officers within the FPD as well as for officers from the Fairfield Fire Department. Pouliot also learned that Moen had encouraged other officers to tape their conversations with Pouliot. Moen admitted to all of these actions.

[¶ 5] In the course of his investigation, Pouliot met with Moen on four separate occasions over the course of two weeks. During the last two meetings, Moen was accompanied by his union representative, Ernest Canelli III. Canelli, as Moen's representative, also engaged in two additional telephone conversations with Pouliot in which the two discussed the possibility of discipline other than termination for Moen's actions.

[¶ 6] Following his investigation, Pouliot concluded that Moen's actions, including encouraging other officers to tape their conversations with Pouliot, undermined his authority as Chief of the police department and encouraged disloyalty and disobedience within the department. Pouliot also decided that he no longer had confidence in Moen's willingness and ability to carry out his orders and keep their discussions confidential. Pouliot terminated Moen's employment at the close of their last meeting. At a subsequent proceeding, the MLRB found that Pouliot's termination of Moen was justified and not rendered in retaliation for Moen's union activities.

[¶ 7] Pursuant to 26 M.R.S.A. § 968(5)(F) (Supp.1997) and M.R.Civ.P. 80C, Local # 340 and Moen then filed a complaint in the Superior Court seeking review of the MLRB's Decision and Order. In the complaint, Moen also asserted a whistleblower protection claim pursuant to 26 M.R.S.A. § 833 (1988)

and alleged, pursuant to 42 U.S.C. § 1983 (Supp.1998),[3] that the Town had terminated him in violation of his rights to procedural due process and free speech. Prior to discovery, the court (*Alexander, J.*) affirmed the MLRB's Decision and Order and dismissed the whistleblower protection claim. Neither of those rulings are challenged on appeal. Following the close of discovery, the court (*Kravchuk, J.*) granted the Town's motion for summary judgment with respect to the section 1983 claims. This appeal by Moen followed.

[¶ 8] A party is entitled to summary judgment where there is no genuine issue of material fact and that party is entitled to judgment as a matter of law. *See Chadwick–BaRoss, Inc. v. T. Buck Constr., Inc.*, 627 A.2d 532, 534 (Me.1993); M.R.Civ.P. 56(c). In ruling on a motion for summary judgment, "the court is to consider only the portions of the record referred to, and the material facts set forth, in the Rule 7(d) statements." *Gerrity Co., Inc. v. Lake Arrowhead Corp.*, 609 A.2d 293, 295 (Me.1992). On appeal, we view the evidence in a light most favorable to the appealing party and review the trial court's decision for errors of law. *See Keyes Fibre Co. v. Lamarre*, 617 A.2d 213, 214 (Me.1992).

### I. Procedural Due Process

[¶ 9] Moen first argues that a genuine issue of material fact exists concerning whether he had a meaningful opportunity to be heard prior to his termination. Due process requires that a tenured public employee be given notice and an opportunity to be heard prior to termination.[4] *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). This pretermination hearing, however, need not be formal or elaborate, as long

---

3. Title 42 U.S.C. § 1983 provides, in pertinent part, that:

    Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law,

suit in equity, or other proper proceeding for redress. . . .

   A municipality is a "person" for the purposes of section 1983. *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 700, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

4. The Town does not dispute that Moen was entitled to a pretermination hearing. *See* 30–A M.R.S.A. § 2671(1) 1996.

as the employee has the opportunity to tell his or her side of the story and explain why termination should not occur. *See id.* at 545–46, 105 S.Ct. 1487. "The pretermination hearing is merely the employee's chance to clarify the most basic misunderstandings or to convince the employer that termination is unwarranted." *Powell v. Mikulecky,* 891 F.2d 1454, 1458 (10th Cir.1989).

[¶ 10] Moen does not dispute that he met with Pouliot on four different occasions and that his union representative, who attended two of those meetings, also conferred with Pouliot twice by phone. In addition, Moen concedes that he was neither intimidated nor afraid of Pouliot, that he was given several opportunities to respond to Pouliot's questions, and that his representative was given access to Pouliot to argue for a sanction less severe than termination. Most importantly, Moen cannot identify any information that Pouliot should have had but did not obtain from him during these meetings.

[¶ 11] The sole basis for Moen's claim that a genuine issue of material fact exists is his conclusory assertion that he was not "given the opportunity to ask questions or present his side of the story." In light of the undisputed facts regarding his opportunities to be heard and his admission that he could not identify any information that Pouliot failed to obtain from him during the course of the pretermination investigation, Moen's conclusory allegation does not present a material dispute of fact regarding his opportunity for a pretermination hearing.

[¶ 12] The Town was required to provide Moen with a meaningful opportunity to be heard. *See Loudermill,* 470 U.S. at 545–46, 105 S.Ct. 1487. It was not, however, required to provide that opportunity in the form of a full evidentiary hearing. *See id.* Moen was provided with a more than ample opportunity to be heard. The court committed no error in granting summary judgment to the Town on Moen's procedural due process claim.

## II. Freedom of Speech

[¶ 13] Moen next argues that he was engaging in constitutionally protected speech when he encouraged other officers to tape their conversations with Pouliot. To prevail on his claim that the Town violated his right to freedom of speech by firing him, Moen must first demonstrate that his statements to the other officers were protected by the First Amendment and that these statements, if protected, were a motivating factor in Pouliot's decision to fire him. *See Brasslett v. Cota,* 761 F.2d 827, 839 (1st Cir.1985). If Moen is successful on those points, the Town must then prove that it would still have terminated Moen in the absence of his statements. *See id.* Because the motion court correctly determined that Moen's statements were not protected by the First Amendment, we do not reach the latter two issues.

[¶ 14] To determine whether a public employee's speech is entitled to the protection of the First Amendment, the court must engage in a two-part analysis. First, the court must determine whether the employee has shown that his or her speech involved a matter of public concern. *See Connick v. Myers,* 461 U.S. 138, 143–49, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Next, if the employee is successful in this initial regard, the court must determine whether the State has demonstrated that its interest, as an employer, in providing efficient public services outweighs the employee's interest, as a citizen, in commenting on a matter of public concern. *See id.* at 149–54, 103 S.Ct. 1684; *see also Pickering v. Board of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) ("The problem in any case is to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.").

[7] [¶ 15] Each of these issues presents a question of law. *See Connick,* 461 U.S. at 148 n. 7, 103 S.Ct. 1684 ("The inquiry into the protected status of speech is one of law, not fact."); *see also Brasslett,* 761 F.2d at 839–40 (construing *Bose Corp. v. Consumers Union of U.S.,* 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984)). We review questions of law *de novo. See H.E. Sargent, Inc. v. Town of Wells,* 676 A.2d 920, 923 (Me.1996).

## A. Matter of Public Concern

[¶ 16] "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147–48, 103 S.Ct. 1684. In *Connick*, an assistant district attorney who was displeased with a proposed transfer distributed a questionnaire to her fellow staff members concerning office transfer policy, office morale, confidence in supervisors, the need for a grievance committee, and whether employees felt pressured to work in political campaigns. *See id.* at 140–41, 103 S.Ct. 1684. After being fired, in part, for distributing the questionnaire, the assistant district attorney filed suit, claiming that she had been terminated for engaging in constitutionally protected speech. *See id.*

[¶ 17] The United States Supreme Court concluded that the questions relating to office transfer policy, office morale, confidence in supervisors, and the need for a grievance committee did not involve matters of public concern because they were not directed toward the performance and potential wrongdoing of the district attorney's office relative to its public trust in investigating and prosecuting criminal cases. *See id.* at 148, 103 S.Ct. 1684. Rather, the Court found that those questions arose from the assistant district attorney's disagreement with her proposed transfer, and were related only to matters of internal discipline and morale within the workplace. *See id.* The Court cautioned that "the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs." *Id.*

[¶ 18] The Court, however, concluded that one question in the questionnaire was significantly different from the others. It determined that asking whether employees felt pressured to work in political campaigns did involve a matter of public concern, pri-

marily because of the employees' fundamental constitutional interest in supporting the political candidates of their choice and the demonstrated public interest in government employees being evaluated on the basis of meritorious performance and not political service. *See id.*

[¶ 19] In this case, Moen's speech similarly involved a matter of public concern. Although motivated in part by a personal desire to gain improved employment benefits and obtain the assistance of the organized labor process in that effort, Moen's speech was also motivated by his objective, as union steward, to effectuate the goals of the MLRA. To the extent Moen sought personal gain for himself or his fellow employees through employment benefits, his statements were not a matter of public interest. The right of public employees to join, form, and participate in labor organizations for the purpose of representation and collective bargaining is, however, like the political question in *Connick*, a matter of public concern about which public employees must have the freedom to speak.[5] The court therefore did not err in concluding that Moen's " 'speech,' encouraging subordinate police officers to tape record their meetings with the Chief of Police, constitute[d] comment upon matters of public concern."

## B. The Government's Interest

[¶ 20] Because Moen's speech involved a matter of public concern, we next apply the *Pickering* balancing test to determine whether Moen's speech was entitled to First Amendment protection. "The *Pickering* balance requires full consideration of the government's interest in the effective and efficient fulfillment of its responsibilities to the public." *Connick*, 461 U.S. at 150–52, 103 S.Ct. 1684. Here, the public employer has the burden of demonstrating that its interests outweigh Moen's interest in unfettered speech. *See id.* at 150, 103 S.Ct. 1684. That balance will depend upon a number of

---

5. *See* 26 M.R.S.A. § 961 (1988), which states that:

It is declared to be the public policy of this State and it is the purpose of this chapter to promote the improvement of the relationship between public employers and their employees by providing a uniform basis for recognizing the right of public employees to join labor organizations of their own choosing and to be represented by such organizations in collective bargaining for terms and conditions of employment.

factors, including (1) the need to maintain discipline or harmony among coworkers, (2) the need for confidentiality, (3) the need to curtail conduct that impedes the employee's proper and competent performance of his daily duties, and (4) the need to encourage a close and personal relationship between the employee and his superiors, where that relationship calls for loyalty and confidence. *See Breuer v. Hart*, 909 F.2d 1035, 1039–40 (7th Cir.1990).

■■■ [¶ 21] When an employer's fulfillment of its public responsibilities requires close working relationships between coworkers, the employer will be given great deference with respect to its judgment concerning employee speech that threatens those relationships. *See Connick*, 461 U.S. at 151–52, 103 S.Ct. 1684. Because the efficient and effective function of law enforcement is especially dependent upon close working relationships, "[s]peech that might not interfere with work in an environment less dependent on order, discipline, and esprit de corps could be debilitating to a police force." *Breuer*, 909 F.2d at 1041. An employer who is confronted with such debilitating employee speech need not "allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action." *Connick*, 461 U.S. at 152, 103 S.Ct. 1684.

[¶ 22] At the time he encouraged the other officers to tape their conversations with Pouliot, Moen was a sergeant serving as second-in-command for patrol operations with supervisory authority over sixteen or seventeen patrol officers. Pouliot relied upon Moen to foster loyalty and discipline among the patrol officers and to assure that orders were understood and carried out. Pouliot also considered it essential that he

have confidence in Moen's willingness and ability to carry out his orders on behalf of the department. Moen's "speech" compromised the necessarily close working relationship between Pouliot and Moen, his second-in-command for patrol operations, and also compromised the necessarily close working relationships between Pouliot and his patrol officers.[6] We agree with the motion court: "Plaintiff was second in command, thereby creating an inevitable schism in the loyalty and obedience of the other officers."[7]

### C. The Balancing Analysis

[¶ 23] Because the balance we must strike here is driven entirely by the individual facts of this case, we must again consider the *importance* of the public speech at issue before completing the analysis. If the speech for which Moen seeks protection had been directly related to a violation of Pouliot's public trust in providing law enforcement services, the balance might well be different. *See id.* ("[A] stronger showing may be necessary if the employee's speech more substantially involve[s] a matter of public concern.") The importance of Moen's speech, however, did not outweigh the Town's interest in the efficient and effective fulfillment of its public responsibilities. Although we have concluded that his speech involved a matter of public concern because of its connection to the MLRA's goals, Moen's speech did not occur in a public setting, did not relate to a violation of the police department's responsibilities to the public, did not advance any other public interests, and was motivated in part by the private employment interests of the Fairfield Police Department's union employees.

■■■ [¶ 24] Having considered the interests at stake, we conclude, as did the motion court, that the Town's interest in providing

---

**6.** In his brief, Moen relies heavily upon *Rankin v. McPherson*, 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987), where the U.S. Supreme Court ruled in favor of an employee after applying the *Pickering* balancing test. *Rankin*, however, involved an administrative level clerical employee in an agency marginally involved in law enforcement who was terminated following her offhand statement, made in response to news of an assassination attempt on President Reagan, that "[I]f they go for him again, I hope they get him." *Id.* at 380–81, 107 S.Ct. 2891. The mat-

ter at bar involves the second-in-command in an agency devoted solely to law enforcement. Given these significant factual distinctions, *Rankin* provides little guidance for resolution of this case.

**7.** The MLRB also found that "Pouliot was justified in terminating Moen because Moen failed to meet the higher standard of conduct that Pouliot expected of his command-supervisor of patrol."

effective and efficient law enforcement outweighed Moen's public speech interest in encouraging secret taping in order to uncover possible MLRA violations. *Cf. Breuer,* 909 F.2d at 1039–42 (county's interest in providing effective and efficient law enforcement outweighs deputy sheriffs interest in accusing sheriff of favoritism and stealing county property); *McMurphy v. City of Flushing,* 802 F.2d 191, 196–99 (6th Cir.1986) (city's interest in providing effective and efficient law enforcement services outweighs police officer's interest in accusing, threatening, and disparaging his superior officers concerning their alleged incompetence and criminal conduct). Moen's conversations with the other officers were therefore not entitled to the protection of the First Amendment. The court committed no error in granting summary judgment to the Town on Moen's free speech claim.[8]

The entry is:

Judgment affirmed.

---

8. Because we conclude that Moen's constitutional rights have not been violated by the Town, we need not reach the Town's claim that it cannot be held liable pursuant to section 1983 where Moen has failed to identify any policy or custom of the Town that caused him to be deprived of his constitutional rights.