2012 ME 111

**Allison HAYDEN–TIDD**

v.

**The CLIFF HOUSE & MOTELS, INC., et al.**

Supreme Judicial Court of Maine.

Argued: May 9, 2012.

Decided: Sept. 11, 2012.

---

Timothy Belcher, Esq., Maine State Employees Association, SEIU Local 1989, Augusta, Harold Lichten, Esq., and Hillary Schwab, Esq. (orally), Lichten & Liss–Riordan, P.C., Boston, MA, on the briefs, for appellant Allison Hayden–Tidd.

Robert W. Kline, Esq. (orally), Kline Law Offices, Portland, on the briefs, for appellees The Cliff House & Motels, Inc., and Kathryn M. Weare.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

SAUFLEY, C.J.

[¶ 1] This appeal involves the interpretation of Maine's minimum wage laws. We

must determine whether a resort violated the requirement to pay its employees the minimum wage when it paid its wait staff a portion of the standard "service charge" that it added to its banquet customers' bills and treated that portion as a "tip" that satisfied the minimum wage law by qualifying the resort for a tip credit. *See* 26 M.R.S. § 664(2) (2010).[1]

[¶ 2] Specifically, Allison Hayden–Tidd appeals from the Superior Court's (York County, *Brodrick, J.*) entry of summary judgment in favor of The Cliff House & Motels, Inc., and its owner, Kathryn M. Weare (collectively, Cliff House) and its denial of Hayden–Tidd's cross-motion for summary judgment. Hayden–Tidd contends that the court erred when it rejected her argument that the wage laws required Cliff House to treat its *entire* banquet service charge as a "tip" to be paid to the banquet servers for purposes of the tip credit statute. *See id.* We agree with the court that Cliff House's compensation arrangement with its banquet servers did not violate the tip credit statute and, therefore, did not result in a violation of the requirement to pay its employees a minimum wage.[2] We affirm the judgment.

## I. BACKGROUND

[¶ 3] Because of reports that Maine restaurants were occasionally withholding tips from their wait staffs, particularly when a customer paid by using a credit card, Maine wage laws now require that the entirety of a tip paid by a food service customer must be given to the waiter or waitress who waits on that customer. 26 M.R.S. § 664(2); L.D. 1543, Summary (123rd Legis.2007); Comm. Amend. A to L.D. 1543, No. H–370, Summary (123rd Legis.2007).

[¶ 4] The question presented by this appeal is whether a "service charge" paid directly to a resort as part of the fees charged for a banquet, as distinguished from ordinary, separate seating service, is a "tip" that must be paid entirely to the wait staff at those banquets. For consistency with the statute, we refer to the waiters and waitresses at the banquets as "servers" to distinguish them from other Cliff House employees who work at banquets but do not provide direct wait service to banquet attendees.

[¶ 5] Hayden–Tidd is a banquet server who worked for Cliff House. On behalf of herself and all banquet servers employed by Cliff House, she filed a class-action complaint against Cliff House alleging that it violated Maine's wage laws when it took a tip credit for the portion of its standard nineteen percent service charge that it allocated to its servers. *See* 26 M.R.S. §§ 621–A, 626–A, 664, 670 (2010). After a period of discovery and before any class certification, Cliff House moved for summary judgment. Hayden–Tidd opposed the motion and filed a cross-motion for summary judgment. The court held a hearing on the competing motions. The court granted Cliff House's motion for summary judgment and denied Hayden–Tidd's cross-motion, holding that, absent a statutory prohibition against the practice, Cliff House could apply a standard service charge to a banquet bill and allocate only a portion of that service charge to the servers as tips without violating Maine's tip

---

1. Title 26 M.R.S. § 664 (2010) has been amended since the events at issue. *See* P.L. 2011, ch. 118, §§ 3, 4 (effective Sept. 28, 2011) (codified at 26 M.R.S. § 664 (2011)).

2. Hayden–Tidd's right of action flows ultimately from her claim of unpaid minimum wages, rather than a stand-alone claim that the tip credit statute has been violated. *See* 26 M.R.S. § 670 (2011) (stating that "[a]ny employer shall be liable to the employee or employees for the amount of unpaid minimum wages" and additionally for liquidated damages, the cost of suit, and reasonable attorney fees); 26 M.R.S. § 671 (2011).

credit statute, 26 M.R.S. § 664(2), because as a matter of law, "[a]bsent a statutory command, banquet servers are not entitled to 100% of the banquet service charge."

[¶ 6] The material facts presented on summary judgment are not in dispute.[3] Cliff House operates a resort and spa located in Ogunquit. As part of its business, Cliff House offers banquet services to its customers. Cliff House employed Hayden–Tidd as a banquet server beginning sometime in June 2009.

[¶ 7] Although not fully developed in the record, banquet services include group events that the resort caters, such as wedding receptions and business meetings. Payment is made in advance of, or separate from, the banquet events. As made clear from the billing forms submitted in conjunction with the motion for summary judgment, individuals attending a banquet do not pay Cliff House directly for the food or beverages served during the event.

[¶ 8] Cliff House adds a nineteen percent service charge to the food and beverage bill of its banquet customers. Each banquet bill includes a line item that is denoted as a nineteen percent "service charge." Each bill also includes a separate line item designated for a "gratuity," although banquet customers rarely add a gratuity. The service charge is mandatory, and a banquet customer does not have discretion in paying the charge. Banquet customers do not receive an explanation of the service charge or how it is distributed.

[¶ 9] Service charges are customary in the banquet setting; Cliff House set its service charge at 19% based on its analysis of its competitors, which it found normally levied a service charge between 17% and 22%. Cliff House uses the term "service charge" because it is the customary term for mandatory charges for banquets. However, Cliff House also uses the term "service charge" for an automatic gratuity it levies on food and beverages when *individual* customers purchase an all-inclusive package from the resort that includes meals. In the individual service, non-banquet setting, the service charge is added to the cost of each meal, and the entire amount of the service charge is treated as a "tip" and is paid to the individual server who waits on the customer.

[¶ 10] In the banquet setting, Cliff House pools together the service charges it collects from different banquets that occur within the same week. Of the nineteen percentage points paid, thirteen of those points, approximately two-thirds, are allocated to banquet servers based on the number of hours each server worked during that week. The remaining six percentage points are allocated to non-server banquet staff including, but not limited to, the dining room manager, group room coordinator, director of group sales, and kitchen employees. Cliff House does not keep any portion of the banquet service charge.

[¶ 11] In addition to their share of the banquet service charge for a particular week, banquet servers are also paid an hourly wage, which would ordinarily be required to be a minimum of $7.50 per hour,[4] but for the addition of tips. Cliff House paid the servers fifty percent of the minimum wage, or $3.75 per hour, because the servers receive a portion of the service charge pool, which Cliff House considers to be tips. Pursuant to this compensation

---

3. Although there are ancillary factual disputes, none of the facts material to the application of the law at issue here are disputed by the parties.

4. Pursuant to 26 M.R.S. § 664(2), employers "may consider tips as part of the wages of a service employee, but such a tip credit may not exceed 50% of the minimum hourly wage." During the time period relevant to this case, the minimum wage was increased from $7.25 per hour to $7.50 per hour. *See id.* § 664(1).

arrangement, Hayden–Tidd earned, on average, $35.09 per hour from June 2009 through October 2009 and $23.92 per hour from April 2010 through June 2010, after receiving her share of the service charge pool. There is no dispute that her average hourly wages far exceeded the minimum wage during those months.

## II. DISCUSSION

### A. Standard of Review

■■ [¶ 12] Summary judgment provides a procedural mechanism to test the application of law to facts that are not in dispute. *See Cach, LLC v. Kulas,* 2011 ME 70, ¶ 8, 21 A.3d 1015. The matter before us is appropriately presented on the competing summary judgment motions because the parties do not dispute the operative facts, and the question presented requires the interpretation of a statute and its application to the facts at hand. We review the interpretation of a statute de novo to determine whether the successful moving party is entitled to judgment as a matter of law. *Thayer Corp. v. Me. Sch. Admin. Dist. 61,* 2012 ME 37, ¶ 4, 38 A.3d 1263. In the matter before us we must determine whether the court correctly interpreted 26 M.R.S. § 664(2).

### B. Minimum Wage and the Tip Credit

#### 1. Construction of the Statute

[¶ 13] Hayden–Tidd argues, in essence, that because the tip credit statute mandates that a tip that is automatically included in a customer's bill or charged to a credit card must be given to the service employee, the entire amount of the service charge paid by banquet customers to Cliff

House should have been given to the banquet servers. *See* 26 M.R.S. § 664(2).[5] In other words, according to Hayden–Tidd, the service charge included in all banquet bills is a tip that cannot be distributed to any employees other than banquet servers. She contends that when Cliff House allocated a portion of the service charge to employees other than the servers, it violated the tip credit statute. Because of this violation, she argues, Cliff House was not entitled to the "tip credit" against the minimum wage and was obligated to pay the banquet servers the full minimum wage pursuant to 26 M.R.S. § 664(1) (setting the minimum wage at $7.50 per hour starting on October 1, 2009). Accordingly, Hayden–Tidd contends that she and the other banquet servers are entitled to an additional $3.75 for every hour that they worked during the period complained of, notwithstanding their actual receipt of, on average, $23.92 to $35.09 per hour during that time.

[¶ 14] At the time of Hayden–Tidd's employment with Cliff House, Maine's tip credit statute, 26 M.R.S. § 664(2), provided that an employer of servers must assure that the servers receive the minimum wage. The law allowed tips to be credited toward that minimum wage, but tips could only account for half of the required minimum wage. *Id.* The result, when tips were sufficient, was that the employer paid one-half of the required minimum wage and the server's tips covered the remaining half and, hopefully, more. If the tips did not bring the server's compensation up to the minimum wage, the employer was required to make up the difference.[6] *Id.*

---

**5.** In her complaint, Hayden–Tidd additionally alleged that Cliff House violated the tip credit statute, 26 M.R.S. § 664(2), because the resort did not comply with its obligation to inform the affected employees before taking the tip credit. However, in her brief on appeal, Hayden–Tidd asserted that the only

question in this case is whether the nineteen percent service charge constituted a tip that was automatically included in the customer's bill. Thus, our decision addresses only that narrow issue.

**6.** Pursuant to 26 M.R.S. § 664(2):

To ensure that the server actually received the entire tip left by a customer, the law prohibited an employer from retaining any portion of the tip, even when the tip was paid by credit card directly to the employer:

> The tips received by a service employee become the property of the employee and may not be shared with the employer. Service employees may volunteer to pool their tips to be split among other service employees or may volunteer to share a part of their tips with other employees who do not generally receive tips directly from customers. *Tips that are automatically included in the customer's bill or that are charged to a credit card must be given to the service employee.* A tip that is charged to a credit card must be paid by the employer to the employee by the next regular payday and may not be held while the employer is awaiting reimbursement from a credit card company.

*Id.* (emphasis added).

[¶ 15] It is this provision that Hayden–Tidd relies on, urging us to conclude that the service charge must be a tip because it is "automatically included in the customer's bill." *Id.* The statute at the time, however, did not define the terms "tip" or "service charge." *See* 26 M.R.S. §§ 661–672 (2010).

[¶ 16] Nothing in the language of the statute expressly precluded Cliff House from treating only a portion of its service charge as a "tip." The statute did, however, require that "[t]ips that are automatically included in the customer's bill or that are charged to a credit card" be given to the service employee. 26 M.R.S. § 664(2). The service charge could thus be understood to be a tip that is automatically included in a banquet customer's bill and is, therefore, required to be given to the banquet servers in full. Alternatively, it could be considered an aggregate charge, only a portion of which would be treated as a tip. The language of the statute does not provide a clear answer.

[¶ 17] When, as here, the language of the statute is ambiguous, we seek to determine the meaning that will best give effect to the intent of the Legislature. *See Anastos v. Town of Brunswick,* 2011 ME 41, ¶ 9, 15 A.3d 1279; *Liberty Ins. Underwriters, Inc. v. Estate of Faulkner,* 2008 ME 149, ¶ 15, 957 A.2d 94. "We also construe the whole statutory scheme of which the section at issue forms a part so that a harmonious result, presumably the intent of the Legislature, may be achieved." *Liberty Ins. Underwriters, Inc.,* 2008 ME 149, ¶ 15, 957 A.2d 94 (quotation marks omitted). "If the plain meaning of the text does not resolve an interpretative issue raised, then we consider the statute's history, underlying policy, and other extrinsic factors to ascertain legislative intent." *Burke v. Port Resort Realty Corp.,* 1999 ME 138, ¶ 8, 737 A.2d 1055.

## 2. Recent Changes to the Minimum Wage Laws

[¶ 18] The Legislature's recent amendment to the tip credit statute, enacted after the time at issue here but before the court entered its judgment, now explic-

---

An employer may consider tips as part of the wages of a service employee, but such a tip credit may not exceed 50% of the minimum hourly wage established in this section. An employer who elects to use the tip credit must inform the affected employee in advance and must be able to show that the employee receives at least the minimum hourly wage when direct wages and the tip credit are combined. Upon a satisfactory showing by the employee or the employee's representative that the actual tips received were less than the tip credit, the employer shall increase the direct wages by the difference.

itly provides for compensation arrangements similar to the one utilized by Cliff House. *See* P.L.2011, ch. 118, § 4 (effective Sept. 28, 2011).

[¶ 19] The tip credit statute now provides,

> An employer in a banquet or private club setting that adds a service charge shall notify the customer that the service charge does not represent a tip for service employees. *The employer in a banquet or private club setting may use some or all of any service charge to meet its obligation to compensate all employees at the rate required by this section.*

26 M.R.S. § 664(2–B) (2011) (emphasis added).

[¶ 20] The definitions section of the minimum wage laws was also amended prior to the court's decision. *See* P.L.2011, ch. 118, § 2 (effective Sept. 28, 2011) (codified at 26 M.R.S. § 663 (2011)). The statute now includes a definition of "tip," stating:

> "Tip" means a sum presented by a customer in recognition of services performed by one or more service employees, including a charge automatically included in the customer's bill. *"Tip" does not include a service charge added to a customer's bill in a banquet or private club setting by agreement between the customer and employer.*

26 M.R.S. § 663(15) (emphasis added).

[¶ 21] There is, however, nothing in the recent legislative amendments to the minimum wage laws that clearly indicates that the Legislature intended the changes to apply retroactively; thus, we do not give retroactive effect to the recent changes for the time period complained of here. *See MacImage of Me., LLC v. Androscoggin Cnty.,* 2012 ME 44, ¶¶ 21–23, 40 A.3d 975; *cf. Bakala v. Town of Stonington,* 647 A.2d 85, 87 (Me.1994) (stating that it may be appropriate to apply later legislative "clarifications" that make no substantive changes in the law). Therefore, we look to the statute as it existed in 2009 and 2010 when Cliff House employed Hayden–Tidd as a banquet server.

### 3. The Applicable Statute

[¶ 22] The minimum wage statute is meant to protect employees from being paid too little. *In re Wage Payment Litigation,* 2000 ME 162, ¶ 18, 759 A.2d 217. The undisputed facts in this case show that Hayden–Tidd earned substantially more than the minimum hourly wage as a banquet server while employed by Cliff House. Thus, Hayden–Tidd cannot argue that Cliff House violated the minimum wage statute as to the overall *amount* of the hourly wages paid to banquet servers once they received their portion of the service charge pool; rather she contends that Cliff House should have paid the banquet servers the full minimum wage in the first instance because the resort's treatment of the service charge violated the tip credit statute's provisions.

[¶ 23] The statutory language at issue, which states that "[t]ips that are automatically included in the customer's bill or that are charged to a credit card must be given to the service employee," 26 M.R.S. § 664(2), was added to the tip credit statute, without debate, in 2007. *See* P.L. 2007, ch. 367, § 2 (effective Sept. 20, 2007). The language was proposed as part of L.D. 1543, which aimed to "clarif[y] that tips belong to the employee providing direct service and that the entire tip ... from any credit card payment must go to the employee." L.D. 1543, Summary (123rd Legis.2007). The proposed bill was assigned to the Legislature's Joint Standing Committee on Labor, *see* L.D. 1543 (123rd Legis.2007), where it received a public hearing. Proponents of the bill and a representative from the Maine Department of

Labor submitted written testimony at the hearing.

[¶ 24] A representative from the Maine Women's Lobby testified that the proposed legislation "clarifies that tips belong to employees and not employers," and that "[p]atrons tip specific employees and certainly don't intend that money to be spent by their employers." Another supporter of the legislation, the President of the Maine State Employees Association, SEIU Local 1989, testified: "The idea that employers skim from these tips is reprehensible, and must be stopped." William A. Peabody, then Director of the Bureau of Labor Standards, testified to the committee: "The bureau has occasionally had to deal with cases where service employees had tips held by their employer." Ultimately, L.D. 1543 was slightly amended, but the language at issue here was not changed. *See* Comm. Amend. A to L.D. 1543, No. H–370 (123rd Legis.2007).

[¶ 25] Although the legislative history of the tip credit statute's language concerning "[t]ips that are automatically included in the customer's bill" is not voluminous, it does suggest that the Legislature's purpose in enacting that portion of the statute was to ensure that employers did not retain tips that were left by individual customers for servers, whether the tips were included automatically in a customer's bill or as part of a credit card transaction.

[¶ 26] Nothing in the legislative history, however, addressed or precluded the practice employed in the context of banquet service by Cliff House. When Cliff House collected a standard service charge and allocated that charge among various employees who worked in the banquet area, it engaged in a practice that was distinct from the practice of calculating a total gratuity on a bill given to customers at the time of service.[7] The service charge is not, by operation of that statute, synonymous with "tip." The statute's discussion of "[t]ips that are automatically included in a customer's bill" cannot be read to mean that *any* charge that is automatically included in the customer's bill must be a treated as a "tip." The fact that the service charge is automatically included in a banquet customer's bill simply does not alone make it a "tip."

[¶ 27] The court did not err in concluding that the statute did not mandate that the entire service charge be treated as a "tip." The statute did not define "tip"; the service charge was not called a "tip" in the contract with the customer; and the service charge was not individually paid to the banquet servers by the persons served. Nothing in the statute prevented Cliff House from allocating the thirteen percentage points of the service charge to the servers as tips and applying the tip credit on that amount in its arrangement with its servers.

[¶ 28] Cliff House allocated approximately two-thirds of its service charge to tips for its banquet servers. It did not violate the law in so doing. Pursuant to this arrangement, Hayden–Tidd earned three to four times the minimum wage and therefore does not have a remedy to collect unpaid minimum wages pursuant to 26 M.R.S. § 670.

[¶ 29] Because Cliff House did not violate the minimum wage laws, the court properly entered judgment for Cliff House on Hayden–Tidd's claims for damages pursuant to 26 M.R.S. § 621–A and 26 M.R.S. § 626–A.

---

7. Indeed, nothing in the statute as it existed at the time of these events would have required that Cliff House give *any* portion of the service charge to the servers. Of course, Cliff House might have had difficulty hiring servers and would have had to pay the full minimum wage to the servers for all hours worked.