STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-12-265
TDW- Cum 11/20/2013

JEFFREY STONE, et al,

Plaintiffs

v.

ORDER

RB PORTLAND LLC, et al,

Defendants

STATE OF MAINE
Cumberland, ss, Clerk's Office

NOV 20 2013

**RECEIVED**

In this action plaintiffs Jeffrey Stone and Kimberly Williams, former employees of the Eastland Park Hotel, are suing present and former owners and managers of the hotel for unpaid wages.

The defendants are (1) MHG Portland LLC, which managed the hotel and employed the hotel personnel from April 2000 until February 28, 2011, (2) RB Portland LLC, which purchased the hotel on February 28, 2011; and (3) Portland II Hotel Management LLC d/b/a New Castle Hotels and Resorts (New Castle), which managed the hotel from March 1, 2011 until the hotel closed for renovations in early 2012.[1]

Stone and Williams are suing on their own behalf and on behalf of a class of similarly situated employees.[2] Williams worked for MHG as a banquet server and in other capacities from May 14, 2004 to January 25, 2011 and from February 11 through February 28, 2011. She also worked for New Castle as a banquet server and in other

---

[1] New Castle Hotels and Resorts is named as a separate party defendant in the complaint but the plaintiffs do not appear to dispute that New Castle is a dba for Portland II Hotel Management LLC.

[2] The parties agreed to postpone class certification until threshold issues involving the effect of the Law Court's decision in Hayden-Tidd v. Cliff House and Motels, Inc., 2012 ME 111, 52 A.3d 925, were resolved.

capacities from March 1, 2011 until the hotel closed for renovations. Stone worked for New Castle as a banquet server and in other capacities from June 1, 2011 until the hotel closed for renovations.

## 1. Summary Judgment

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In considering a motion for summary judgment, the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. E.g., Johnson v. McNeil, 2002 ME 99 ¶ 8, 800 A.2d 702. The facts must be considered in the light most favorable to the non-moving party. Id. Thus, for purposes of summary judgment, any factual disputes must be resolved against the movant. Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted. Rodrigue v. Rodrigue, 1997 ME 99 ¶ 8, 694 A.2d 924.

In this case, although the parties sharply differ in their characterizations of the facts, the court does not discern that there is any real dispute as to the underlying facts themselves.

## 2. Facts

This case involves a variation of the issues that were before the Law Court in Hayden-Tidd v. Cliff House and Motels, Inc., 2012 ME 111, 52 A.3d 925. In that case the Law Court ruled that fixed-percentage "service charges" paid to a resort as part of the fees charged for a banquet were not "tips" that had to be fully paid over to the banquet

2

servers under Maine's wage laws. The court also ruled that the resort was entitled to pay over a portion of those service charges to the banquet servers to qualify for a tip credit in order to satisfy the minimum wage statute. 2012 ME 111 ¶¶ 26-28.

The difference between this case and Hayden-Tidd is that in this case certain of the fixed-percentage charges imposed as part of banquet fees charged by the Eastland Hotel were denominated by the hotel as "gratuities" rather than "service charges" in the contract documents sent to the parties who booked and paid for the banquets.[3]

The summary judgment record reflects that parties contracting for a banquet at the Eastland Hotel received up to three contract documents: an Event Contract or Catering Contract, a Banquet Event Order, and a Banquet Check. Also contained in the record are two promotional brochures that the Eastland Hotel distributed for weddings. Those brochures both contain statements that an 18% gratuity, 2% taxable hotel service fee, and 7% Maine sales tax will be added to all food and beverage prices.

There are three event or catering contracts in the record which refer to the addition of "an 18% gratuity, 2% taxable Maine State service charge, and 7% Maine State Tax." Ex. 5 to Clough Affidavit (June 17, 2011 banquet); Ex. 10 to Clough Deposition (May 21, 2011 graduation party); Ex. 13 to Clough Deposition (December 1, 2011 banquet). At least four event or catering contracts go farther than that, stating:

> To ensure the superior service of Eastland Park Hotel, 20% gratuity will be added to all food and beverage charges.

---

[3] With one exception the plaintiffs are not seeking relief as to any banquet events where the contract documents consistently refer only to "service charges." See Plaintiffs' Opposition to Defendant's Motion for Summary Judgment dated July 8, 2013 at 2 n.2. The exception involves banquets or events that occurred after September 27, 2011. As to those events, plaintiffs contend that they are entitled to relief if the contract documents did not expressly notify the customer that banquet service charges did not represent tips to employees. This argument is based on a 2011 amendment to 26 M.R.S. § 664. See 26 M.R.S. § 664(2-B), as amended by P.L. 2011, c. 118 § 4 (effective September 28, 2011). This issue is discussed at pp. 11-13 below.

3

Ex. 7 to Clough Deposition (December 31, 2011 wedding); Ex. 8 to Clough Deposition (October 21 event). To the same effect, see Ex. 11 to Clough Deposition (September 17, 2011 wedding) and Ex. 12 to Clough Deposition (August 18, 2011 event), which contain the same language but refer to "food, beverage, and audiovisual charges."

Even stronger language is contained in Exhibit 6 to the Clough Deposition, an event contract for a convention on April 3-10, 2011, which states:

> 18% of the food and beverage total plus applicable state or local tax will be added to Group's account as a gratuity and fully distributed to servers, and where applicable, bussers and/or bartenders assigned to the event.

Clough Dep. Ex. 6 at NC000273. That same document lists a 2% service charge that is expressly described as "not a gratuity."[4]

At the same time, the summary judgment record also demonstrates that there are instances where the event or catering contract refers to an 18% gratuity and a 2% service charge but other contract documents for the same event refer only to a 20% service charge. See Ex. 5 to Clough Affidavit, Ex. 11 to Clough Deposition, and Ex. 12 to Clough Deposition, where the Banquet Event Orders or the Banquet Checks or both describe the fixed-percentage additional charges differently from the event or catering contracts – as solely a 20% "service charge."

In any event, the summary judgment record indicates that regardless of the wording used in certain contract documents, the defendants treated the entire 20% (the 18% gratuity and the 2 % service charge) as a banquet service charge within the meaning of the Hayden-Tidd decision. It allocated 14% of the "gratuity" amount to the banquet servers, taking a tip credit for that amount. It allocated 4% of the "gratuity" to other staff (Executive Chef, Banquet Manager, Banquet Chef, and Conference or

---

[4] However, the preceding page of that document inconsistently refers to a "20% service charge." Ex. 6 to Clough Deposition at NC000272.

4

Banquet Coordinator). At least one of those positions was a salaried position, and one (the Executive Chef) did not do any cooking for banquet events. If any of those positions was vacant, the 1% that would otherwise have gone to that individual was added to the 2% that went to the hotel as revenue in the form of a service charge.

This is similar but not identical to the disposition of the banquet service charge in Hayden-Tidd. From the 19% service charge in that case, 13% went to banquet servers and the remaining 4% went to non-server banquet staff apparently including some salaried employees. 2012 ME 111 ¶ 10.[5]

The hourly rate of pay for banquet servers such as Williams and Stone was approximately one-half of the minimum wage during the time they worked in that capacity at the Eastland Hotel. This is permissible under § 664(2) so long as an employee receives at least the minimum wage once tips are added.

In this case, once Williams received her share of the amounts denominated as banquet service charges or banquet gratuities, her total hourly compensation for banquet events averaged $ 19.03 when she was working for MHG in 2006-2010 and $ 24.06 when she was working for New Castle after March 2011. Once Stone received his share of the amounts denominated as banquet service charges or banquet gratuities, his total hourly compensation for banquet events during the time he worked for New Castle averaged $ 21.57. Defendants' SMF ¶¶ 33-35, citing Clough Aff. ¶¶ 33-35.[6]

---

[5] In Hayden-Tidd, no portion of the service charge was retained by the Cliff House, but there is nothing in the decision that would have suggested a different result if the Cliff House had retained 2% as revenue for itself.

[6] The factual assertions in ¶¶ 33-35 of defendants' SMF were denied by plaintiffs, but they have offered no factual evidence to dispute defendants' figures as to the total hourly compensation (hourly wage plus share of gratuity or service charge) received by Williams and Stone.

5

## 3. Applicable Law

Although the Hayden-Tidd case was decided under the law as it existed prior to certain 2011 amendments to 26 M.R.S. §§ 663 and 664, those amendments are fully consistent with the court's decision. The court can therefore look equally to the Hayden-Tidd decision and the current statute in addressing all of the issues in this case with one exception. The exception is whether defendants RB Portland LLC and New Castle are precluded from treating banquet service charges as tips if they did not comply with the first sentence of 26 M.R.S. § 664(2-B), which was added in 2011. That issue is addressed at pp. 11-13 below.

26 M.R.S. § 663(15) defines "tip" as follows:

> "Tip" means a sum presented by a customer in recognition of services performed by one or more service employees, including a charge automatically included in the customer's bill. "Tip" does not include a service charge added to a customer's bill in a banquet or private club setting by agreement between the customer and employer.

The other two statutory sections that are applicable are contained in 26 M.R.S. § 664, which provide:

> **Tip credit.** An employer may consider tips as part of the wages of a service employee, but such a tip credit may not exceed 50% of the minimum hourly wage established in this section. An employer who elects to use the tip credit must inform the affected employee in advance and must be able to show that the employee receives at least the minimum hourly wage when direct wages and the tip credit are combined. Upon a satisfactory showing by the employee or the employee's representative that the actual tips received were less than the tip credit, the employer shall increase the direct wages by the difference.
>
> The tips received by a service employee become the property of the employee and may not be shared with the employer. Tips that are automatically included in the customer's bill or that are charged to a credit card must be treated like tips

6

given to the service employee. A tip that is charged to a credit card must be paid by the employer to the employee by the next regular payday and may not be held while the employer is awaiting reimbursement from a credit card company.

26 M.R.S. § 664(2).

> **Service charges.** An employer in a banquet or private club setting that adds a service charge shall notify the customer that the service charge does not represent a tip for service employees. The employer in a banquet or private club setting may use some or all of any service charge to meet its obligation to compensate all employees at the rate required by this section.

26 M.R.S. § 664(2-B).[7]

Charges Denominated as "Gratuities" in Contract Documents

The threshold question is whether semantics matter. The defendants argue that whether or not the 18% or 20% charge added to the banquet bill was called a gratuity or a service charge in the contract documents, it constitutes "a service charge added to a customer's bill in a banquet or private club setting by agreement between the customer and employer" within the meaning of the second sentence of 26 M.R.S. § 663(15) and therefore does not constitute a tip. Regardless of the nomenclature used in certain of its contract documents, the hotel in fact treated the 18% or 20% "gratuity" amount as a service charge because it allocated only 14% to the servers, 4% to other staff, and 2% to revenue.

There is some force to this argument. The Law Court's decision in Hayden-Tidd took a functional approach in determining that a "service charge" added to a banquet

---

[7] Both the current supplement to 26 M.R.S.A. and West's 2012 Compact edition of the Maine Revised statutes include the language contained in the second paragraph of § 664(2), as quoted above, as a second paragraph in § 664(2-B) as well. A review of P.L. 2011, c. 118 demonstrates that the language in the second paragraph of § 664(2) should only appear in that section.

7

bill was not a tip even though a different "service charge" added to an individual customer's meal bill did constitute a tip. 2012 ME 111 ¶ 9. If some "service charges" constitute tips and some do not, it can be argued that some charges labeled as "gratuities" can constitute tips and some can constitute banquet service charges.

The problem with this argument is that in certain of the contract documents relied upon by plaintiffs, the defendants charged both a 2% "service charge" and an 18% "gratuity." It is doubtful that they should now be permitted to retroactively rewrite those contracts to combine those amounts into one 20% service charge. In at least four instances the contract documents referred simply to a 20% gratuity. When an employer labels a fixed-percentage charge as a gratuity, it should be held to that description. That is particularly true to the extent that any contracts described the 18% as a gratuity that will be "fully distributed to the servers." Clough Dep. Ex. 6 at NC000273.

The Law Court in Hayden–Tidd noted that the service charge at issue in that case was not called a tip. 2012 ME 111 ¶ 27. At the same time the service charge in that case was not individually paid by the persons served. Id. Although the case at bar is similar to Hayden-Tidd in that the gratuity amount was not individually paid by the persons served, it differs from Hayden-Tidd in that the contracts which are the subject of plaintiffs' claims referred to the fixed-percentage charge as a gratuity, another word for tip.

Defendants thus argue that a fixed-percentage "gratuity" set forth in contract documents that are entered a substantial time before the banquet event in question do not meet the definition of "tip" in that they do not constitute "a sum presented by a customer in recognition of services performed by one or more service employees." 26 M.R.S. § 663(15). The problem with this argument is that the same sentence in § 663(15) goes on to include "a charge automatically included in the customer's bill." If a

8

customer contracting for a banquet is told that a fixed-percentage "gratuity" is being automatically included, the court can seen no reason why the customer would not understand that the amount in question was being paid in recognition of services to be performed by one or more service employees.

It bears emphasis that in Hayden-Tidd the bills presented with banquet contracts included both a fixed-percentage service charge, which was mandatory, and a separate line item for a gratuity, which was optional. 2012 ME 111 ¶ 8. The Law Court upheld the employer's treatment of the "service charge," but nothing in its opinion suggests that optional amounts designated as a "gratuity" would not have become the property of the banquet servers.

Ultimately, therefore, the court finds the employer's characterization of the charge to be controlling. The contract documents relied on by plaintiffs characterize the charges as an 18% or 20% gratuity, and 26 M.R.S. § 664(2) provides that "tips that are automatically included in the customer's bill . . . must be treated like tips given to the service employee."[8] Once an employer designates an amount as a tip or gratuity, this provision of the statute makes the tip or gratuity the property of the service employees. Id.

It follows that where the banquet contract documents for a given event consistently refer to an 18% or 20% gratuity, the entire gratuity (not just the 14% already distributed) was the property of the service employees. "Service employee" is defined

---

[8] This language has been in the statute since § 664 was amended in 2007. One of the two named plaintiffs, Kimberly Williams, worked for the Eastland Hotel prior to the 2007 amendments, but it does not appear that plaintiffs are seeking recovery for any events prior to the 2007 amendments. See Plaintiffs' Opposition and Cross-Motion dated July 8, 2013 at 4. In addition, the parties have not addressed the legal status of any fixed-percentage banquet service charges or fixed-percentage banquet gratuities under the law as it existed before September 20, 2007 – the date that the 2007 amendments to § 664 went into effect.

9

in the statute to mean any employee engaged in an occupation in which the employee customarily and regularly receives more than $ 30 a month in tips. 26 M.R.S. § 663(8). It does not appear to be disputed that the Executive Chef, Banquet Manager, Banquet Chef, and Conference or Banquet Coordinator would not qualify as service employees under the statute.

To the extent that a portion of the "gratuity" was not distributed to service employees, therefore, plaintiffs are entitled to summary judgment. However, in the case of those events where some contract documents describe an 18% gratuity and a 2% service charge and other contract documents for the same event describe a 20% service charge,[9] the court is obliged on a motion for summary judgment to draw all inferences against the party seeking summary judgment and therefore finds that, as to those events, there are disputed issues for trial.

Plaintiffs appear to argue that if the Eastland Hotel failed to pay the entire amount of the fixed-percentage gratuity to banquet servers, it has forfeited the right to claim a tip credit for that amount and therefore owes not just the difference between 14% and either 18% or 20% but also must pay its servers the amount necessary to bring their hourly rate up to the applicable minimum wage. However, there is no such forfeiture provision in the statute, which permits an employer to meet the minimum wage requirements by making up the difference with the tip credit.

In Hayden-Tidd, the Law Court upheld the employer's ability to employ the tip credit and meet minimum wage requirements by distributing to the servers a portion of the service charge. 2012 ME 111 ¶ 27. Indeed, the Law Court repeatedly emphasized that, with the distribution of a portion of the service charge, the servers had received considerably more than the minimum wage even though their hourly wage rate was

[9] E.g., Ex. 5 to Clough Affidavit and Ex. 11 and 12 to Clough Deposition.

10

less than the minimum wage. 2012 ME 111 ¶¶ 11, 13, 22, 28. As in Hayden-Tidd, Stone and Williams cannot successfully argue that the employer violated the minimum age statute "as to the overall amount of hourly wages paid to banquet servers" once the banquet servers' portion of the fixed percentage charge, whether labeled a service charge or a gratuity, is figured in. 2012 ME 111 ¶ 22. The record reflects that they ultimately earned compensation for banquet events equaling approximately three times the minimum wage.

Banquet Events Subsequent to 2011 Amendments

The remaining dispute between the parties concerns banquet events subsequent to September 28, 2011 where the contract documents used by defendants RB Portland LLC and/or New Castle referred solely to a 20% service charge and did not contain any notification that the service charge did not represent a tip. The 2011 amendment to § 664(2-B), effective on September 28, 2011, required such a notification.

On this issue it is not disputed that all the Banquet Event Orders subsequent to September 27, 2011 refer to a 20% service charge. Defendants' SMF ¶ 28.

An initial question in this connection is whether such a notification had to be given with respect to contracts that were entered into prior to September 28, 1011 for banquets or other events that were held after September 28, 2011. The court does not need to reach this issue for the reasons set forth below.

Plaintiffs contend that absent the required notification, the defendants were not entitled to avail themselves of what they characterize as the "safe harbor" provision allowing the employer to impose a service charge that did not constitute a tip. Plaintiffs'

11

Reply Brief dated August 1, 2013 at 2. As a result, plaintiffs contend, the defendants are liable for damages.[10]

The problem with this argument is that what plaintiffs refer to as a "safe harbor" was already in existence prior to the 2011 amendment. As the Hayden-Tidd decision holds, employers were permitted to impose banquet service charges prior to the 2011 amendment and were not required to treat those charges as tips. The question is whether the Legislature, in enacting the notification requirement, intended that employers were thereafter required to treat the service charge as a tip if no notification was made.

There is no language in the statute that suggests that the Legislature intended to condition the employer's ability to impose a banquet service charge upon notification to the person contracting for the banquet that the service charge did not represent a tip.[11] Nor is there any language in the statute suggesting that employees have a private right of action for damages resulting from any violations of the statute other than their express right to collect unpaid wages under 26 M.R.S. § 670. See In re Wage Payment Litigation, 2000 ME 162 ¶ 7, 759 A.2d 217, 222.

---

[10] Somewhat mysteriously, plaintiffs argue that a jury should decide the appropriate measure of damages for the violation. To the extent that plaintiffs are arguing that a jury would be free to decide for itself what damages should be awarded, the court disagrees. In any jury trial the court has to give legal instructions as to the measure of damages that can be awarded. In this case, if plaintiffs were entitled to recover damages for a failure to provide notification, there are two possible measures of those damages. The first would be to treat any service charge imposed without notification as a tip collectible as unpaid wages. This amount could be readily calculated. The second would be to allow recovery of any amounts that plaintiffs could prove would have been added as a gratuity above and beyond the service charge if notification had been given.

[11] If the employer were to make full disclosure in the contract documents, those documents would have to state that the service charge was not a tip, that 14% was distributed to service employees, and that the employer was treating some of the remaining amount as revenue and distributing some to non-service employees.

12

Plaintiffs have cited Massachusetts and Hawaii statutes that also include a notice requirement. See Mass. Gen. L. c. 149 § 152A(d); Hawaii R.S. § 481B-14. Both of those statutes, however, expressly make the employer's ability to impose a fixed percentage charge other than a tip subject to the notification requirement. If the Maine Legislature had intended to condition an employer's ability to impose a service charge on a notification requirement, it could easily have included similar language to that effect in § 664(2-B).

Accordingly, the court concludes that violations of the notification provision may be enforced by a fine or injunction under 26 M.R.S. § 671 but that banquet service charges imposed without the § 664(2-B) notification do not become unpaid wages that can be recovered by plaintiffs or otherwise give rise to a private right of action for damages.

The entry shall be:

Plaintiffs' motion for summary judgment is granted as to those events where the applicable banquet contract documents describe a fixed-percentage addition to the bill as a gratuity. In those instances the entire charge listed as a gratuity, not just 14%, should have been distributed to service employees.

Plaintiffs' motion for summary judgment is denied as to those banquet events where the contract documents are inconsistent and refer to both an 18% gratuity and a 2% service fee and to a 20% service fee with respect to the same event. As to those banquet events, there is a factual dispute for trial.

Plaintiffs' motion for summary judgment is denied with respect to their claims that the defendants did not pay the minimum wage amount required under 26 M.R.S. § 664(1) and is denied with respect to plaintiffs' claims based on the notification requirement in 26 M.R.S. § 664(2-B).

Defendants' motion for summary judgment is granted as to plaintiffs' claims that defendants did not pay the minimum wage amount required under 26 M.R.S. § 664(1) and is granted as to plaintiffs' claims based on the notification requirement in 26 M.R.S. § 664(2-B). In all other respects, defendants' motion for summary judgment is denied.

13

The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: November __19__, 2013

Thomas D. Warren
Justice, Superior Court

14