ENTERED JAN 2 3 2015

STATE OF MAINE
YORK, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-10-309
JHO-YOR-01-21-15

JONATHAN L. WEBBER,

Plaintiff,

v.

**ORDER**

TOWN OF OGUNQUIT,

Defendant.

### I. Background

#### A. Procedural Posture

Plaintiff Jonathan Webber brings this M.R. Civ. P. 80B appeal together with an independent cause of action for due process violations against the Town of Ogunquit arising out of his termination from employment as Director of Public Works. Before the court are (1) cross-motions for summary judgment on Webber's due process claim and damages sought under Section 1983, and (2) opposing Rule 80B briefs appealing the Town of Ogunquit's decision.

#### B. Facts

The parties agree on the following facts unless otherwise indicated. Jonathan Webber ("Webber") was employed as the Director of the Department of Public Works in Ogunquit, Maine for 34 years prior to his termination. (Def.'s S.M.F. ¶ 1; Pl.'s Opp. Def.'s S.M.F. ¶ 1.) At the time Webber was terminated, he reported to Thomas Fortier

1

("Fortier"), who was then the Town Manager. (Def.'s S.M.F. ¶¶ 6, 9.) There were no personal or professional conflicts between Webber and Fortier. (Def.'s S.M.F. ¶ 7.) Webber had an exemplary record and received positive reviews throughout his tenure. (Pl.'s S.M.F. ¶ 2.)

### 1. Webber's OUI and License Suspension

On Feburary 14, 2010, Webber was driving his personal vehicle in Dover-Foxcroft, Maine when he was stopped and arrested by police for operating under the influence of alcohol. (Def.'s S.M.F. ¶¶ 10-11; Pl.'s Opp. Def.'s S.M.F. ¶ 12.)

Fortier later testified before the Select Board of Ogunquit he heard about Webber's arrest "through the grapevine"[1] and in fact had previously been asked by Jackie Bevins, a member of the Select Board, "what he was going to do about it?" (Def.'s S.M.F. ¶ 18.) During a meeting between Fortier and Webber, Fortier represented that he was taking no disciplinary action on the OUI at that time. (Def.'s S.M.F. ¶ 23.) Fortier also told Jackie Bevins he would take no adverse employment action because of the OUI. (Pl.'s S.M.F. ¶ 40.)

Webber hired Attorney Jon Gale ("Attorney Gale") to represent him in the OUI case. (Def.'s S.M.F. ¶ 26.) Attorney Gale filed a notice of appearance, entered a "not guilty" plea, requested a jury trial, and requested an administrative hearing with the Bureau of Motor Vehicles ("BMV"). (Def.'s S.M.F. ¶¶ 27-28.) A BMV letter dated April 8, 2010 confirmed that Webber's license suspension was stayed pending further proceedings and he was permitted to drive. (Pl.'s S.M.F. ¶ 12.) Due to a clerical error at

---

[1] The parties dispute when Webber and Fortier first discussed the OUI. According to Webber, it was discussed on "numerous occasions" and Webber brought it up first. (Pl.'s Opp. Def.'s S.M.F. ¶ 1.) In the Town's view, Fortier confronted Webber weeks after it occurred. (Def.'s S.M.F. ¶¶ 19-20.)

the Dover-Foxcroft District Court, the appearance and plea was not docketed; this resulted in a "failure to appear" and an arrest warrant was erroneously issued for Webber's arrest. (Def.'s S.M.F. ¶¶ 32-35.) As a result, his license was suspended automatically. (Def.'s S.M.F. ¶ 35.)[2] Neither the District Court nor the BMV notified Webber or his counsel that his license had been suspended for failure to appear. (Def.'s S.M.F. ¶ 39.)

On May 14, 2010, Webber contacted Sharma Damren ("Damren"), an employee of the Ogunquit Police Department, who confirmed that his license had been suspended and there was a warrant for his arrest. Damren told him how to "turn himself in." (Def.'s S.M.F. ¶¶ 41-45.) Webber was confused, because his attorney had informed him that according to the Bureau of Motor Vehicles, his license was not suspended. (Pl.'s Opp. Def.'s S.M.F. ¶¶ 41-45.)

On the morning of May 17, 2010, Webber spoke with Fortier and informed him he would be out of work for a week for medical reasons. (Def.'s S.M.F. ¶ 58.)[3] Just after lunch that same day, Attorney Gale called Webber and advised him that his license was suspended effective at midnight (meaning 12:00 AM, May 18, 2010). (Def.'s S.M.F. ¶ 61.) Webber and Fortier spoke again the afternoon of May 17. (Def.'s S.M.F. ¶¶ 62-63.) The parties dispute whether Webber brought up the suspension during the conversation of the afternoon of May 17.[4] On May 18, 2010, Fortier called Webber to tell him that

_____

[2] Webber had no knowledge these of these events at the time they transpired. (Pl.'s Opp. Def.'s S.M.F. ¶¶ 33-35.)

[3] Webber claims they discussed the OUI; Fortier testified otherwise. (Pl.'s Opp. Def.'s S.M.F. ¶ 58.)

[4] Webber testified that he informed Fortier about the suspension, which Webber's daughter overheard. (Def.'s S.M.F. ¶¶ 62-65.) Fortier testified that Webber did not inform him, and the Select Board accepted Fortier's version. (Def.'s S.M.F. ¶¶ 66-67.)

3

because of the suspension, the Town needed to pick up Webber's Town vehicle. (Def.'s S.M.F. ¶ 70.)

## 2. Webber's Termination and Hearings on the Matter

On May 21, 2010, Webber returned to work and Fortier handed him a letter stating he was terminated for failure to notify the Town Manager of the license suspension within 24 hours pursuant to Personnel Rule 5.18(c). (Def.'s S.M.F. ¶ 75.) The Town of Ogunquit's Personnel Rule 5.18(c) provides: "The department head or Town Manager shall be notified immediately (within 24 hours) in the event a driver's license is suspended or revoked for any reason." (Def.'s S.M.F. ¶ 50.)[5] The letter states "since you have violated the Town's Personnel Rules, this letter serves as your notice of termination, effective immediately." The decision to fire Webber had been made prior to May 21, 2010. (Pl.'s S.M.F. ¶ 69.) Webber, with the assistance of counsel, filed a letter challenging the termination for failure to provide a pre-termination hearing. (Def.'s S.M.F. ¶ 81.)

On July 14, 2010, a meeting was held with Fortier, the Ogunquit Police Chief, Town Counsel Linda McGill ("Attorney McGill"), Attorney Gale, and Attorney Susan Driscoll ("Attorney Driscoll") as counsel for Webber, in attendance. (Def.'s S.M.F. ¶ 84.) The Town states that at this meeting, Fortier "received more information" than at the May 21, 2010 meeting. Webber counters that this is obvious because Fortier "was not presented any information prior to or at the time of the termination." (Pl.'s Opp. Def.'s S.M.F. ¶¶ 86-87.) Fortier issued a letter on August 5, 2010, upholding the termination decision. (Def.'s S.M.F. ¶ 88.) Webber appealed to the Select Board and requested a public hearing. (Def.'s S.M.F. ¶ 91.)

---

[5] Webber was aware of the policy. (Def.'s S.M.F. ¶ 52.)

4

A hearing occurred September 14, 2010. (Def.'s S.M.F. ¶ 92.) Evidence was submitted and Fortier, Webber, Attorney Gale, and Attorney Driscoll all testified before the Select Board. (Def.'s S.M.F. ¶ 92.)[6] The hearing was ultimately continued to September 16, 2010 because of a scheduling conflict. (Def.'s S.M.F. ¶¶ 101-02.)

At the September 16 hearing, Attorney Driscoll delivered a summary argument and then the floor was opened for questions. (Def.'s S.M.F. ¶¶ 106-07.) Fortier answered questions from the Select Board; Webber was not allowed to cross-examine him. (Pl.'s Opp. Def.'s S.M.F. ¶ 109.) After 57 minutes, a motion was made for an executive session to be held outside the presence of the public. (Def.'s S.M.F. ¶ 110.)

After the executive session, the Board returned to deliberate. (Def.'s S.M.F. ¶¶ 110, 113.) A motion to reinstate Webber was made and failed, with only Board Member Score in favor. (Def.'s S.M.F ¶¶ 115-16.)[7] Thereafter a motion to uphold Town Manager Fortier's decision was made and passed 4-1. (Def.'s S.M.F. ¶¶ 119-20.) Attorney McGill composed a written decision that the Board adopted on September 27, 2010. (Def.'s S.M.F. ¶¶ 124-25.)[8]

### 3. Jackie Bevins

The Town denies or objects to most assertions about Select Board Member Jackie Bevins ("Bevins"). (Def.'s Resp. Pl.'s S.M.F. ¶¶ 44-54.) Nonetheless, the Town admits

---

[6] According to Webber, at this time he did not have access to the packet compiled for the Board, and was unaware Board Member Jackie Bevins had "targeted" him. (Pl.'s Opp. Def.'s S.M.F. ¶ 94.) The packet contained a poster with Webber's police mugshot cropped into an old western-style "WANTED" border. (Def.'s Resp. Pl.'s S.M.F. ¶ 80.)

[7] The Town's additional statement of facts is almost exclusively devoted to painting Board Member Score in an unfavorable light. (Def.'s Addt'l S.M.F. ¶¶ 1-22.) Webber responds that these factual allegations are irrelevant. (Pl.'s Resp. Def.'s Addt'l S.M.F. ¶¶1-22.)

[8] Webber contends the decision contains findings never made by the Board. (Pl.'s Opp. Def.'s S.M.F. ¶ 1.)

(1) Fortier first learned about Webber's OUI from Bevins; (2) Bevins demanded to know what Fortier would do about it and he said he did not plan to do anything about it; (3) Bevins apparently "used the 'F word' all the time"; (4) Bevins called Webber a "fucking crook" in Fortier's presence on numerous occasions; and (5) Bevins told Fortier to fire Webber. (Def.'s Resp. Pl.'s S.M.F. ¶¶ 45, 46, 49, 50, 60-61.)

According to Select Board Member Michael Score's deposition testimony, upon learning of the OUI, Bevins told Fourtier something like, "this is the excuse you have to fire that fucking crook, now we got him where we want him. We got him." (Pl.'s S.M.F. ¶ 62; R. 654.) Score further testified that he had ex parte communications in which Bevins told him to uphold the decision to terminate Webber. (Pl.'s S.M.F. ¶ 77.) According to Score's handwritten notes from the proceedings and deposition, during the executive session of the September 16, 2010 hearing, Bevins said "fuck the law, fuck Jon Webber." (Pl.'s S.M.F. ¶ 93; R. 379, 670, 706.) The Town denies Score's allegations. (Def.'s Resp. Pl.'s S.M.F. ¶¶ 62, 77, 93.)

## II. Discussion

The posture of this case requires the court to consider Webber's 80B appeal and independent claims under separate standards of review. The 80B appeal is of the Town of Ogunquit Select Board's decision, while the independent claims are before this court's original jurisdiction. 3A Harvey, *Maine Civil Practice* Rule 80B Notes at 531 (3d ed. 2011).

### A. Summary Judgment Standard

Summary judgment is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56. "A material

fact is one having the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573. Where there is sufficient evidence to support competing versions of material facts, the outcome must be decided by the factfinder at trial. *See id.* (citations omitted).

### B. Rule 80B Appeal Standard

In 80B appeals, this court reviews the decision by the fact-finder below for errors of law, abuse of discretion, or findings not supported by substantial evidence. *Friends of Lincoln Lakes v. Town of Lincoln*, 2010 ME 78, ¶ 9, 2 A.3d 284; *Aydelott v. City of Portland*, 2010 ME 25, ¶ 10, 990 A.2d 1024. The party challenging the decision below has the burden of proof to overturn the decision. *Id.* Procedural unfairness is reversible error and a "decision can be 'arbitrary and capricious' if it was not the product of the requisite processes." *Hopkins v. Dep't of Human Servs.*, 2002 ME 129, ¶ 12, 802 A.2d 999 (citations omitted). This court reviews the operative decision[9] of the municipality directly. *Stewart v. Town of Sedgwick*, 2000 ME 157, ¶ 4, 757 A.2d 773.

### C. Webber's Independent Claims

The court first considers, on cross-motions for summary judgment, Webber's independent claims for due process violations and damages under Section 1983.

#### 1. Jurisdiction: Webber May Bring Independent Claims

The Town asserts Webber's sole remedy for any due process deficiencies is through his 80B appeal. (Def.'s Mot. Summ. J. 13.) Under Maine law, an independent

---

[9] The parties agree the operative decision reviewed here is the Board's, not the Town Manager's. (Pl.'s Brief 24; Def.'s Opp. Brief 2-3.) The Board clearly undertook de novo review because the Board heard witnesses, considered evidence, and reached a final decision in the matter. *See Stewart*, 2000 ME 157, ¶¶ 4-7, 757 A.2d 773.

cause of action may be brought in addition to 80B review. *Mercier v. Town of Fairfield*, 628 A.2d 1053, 1057 (Me. 1993) ("That the court has jurisdiction to entertain a claim for review of government action pursuant to Rule 80B does not prevent the filing of independent civil claims otherwise available."); *see also Solmitz v. Maine Sch. Admin. Dist. No. 59*, 495 A.2d 812, 816 (Me. 1985) (free speech violation claim under Section 1983 brought together with Rule 80B appeal). Thus, as a threshold matter, Webber may pursue independent claims together with his Rule 80B appeal. The Town specifically emphasizes that the due process claim is duplicative of the 80B appeal—an argument addressed below in Part II.C.3.

### 2. Due Process: Pre-Termination

The cornerstone of due process is notice and a hearing. The State of Maine and Town of Ogunquit vests town managers with the power to remove employees only "for cause, after notice and hearing." 30-A M.R.S. § 2636; Ogunquit, Me., Town Charter § 405.5. The Ogunquit Town Charter thus vests public employees with a property interest in continued employment. *Barber v. Inhabitants of Town of Fairfield*, 460 A.2d 1001, 1005 (Me. 1983) (holding removal "for cause after notice and hearing" triggers due process protections).[10] A formal or elaborate pre-termination hearing is not required; the employee simply must have an opportunity to "clarify the most basic misunderstandings" and explain why termination is inappropriate. *Moen v. Town of Fairfield*, 1998 ME 135, ¶ 9, 713 A.2d 321.

The parties do not dispute the basic events leading to the termination, but rather how to characterize each event. In Webber's view, no pre-termination hearing occurred,

[10] At oral argument, the Town conceded that Webber had a property interest in continued employment sufficient to trigger due process protections, but argued Webber received all the process that was due under the law.

8

because he received the May 21 termination letter without any notice he would be fired, and in fact Fortier had originally informed Webber he would take no adverse action. By Fortier's own admission, he was not yet aware of all the facts surrounding the OUI and license suspension on May 21. Because the decision was made and the termination letter issued before Webber had any chance to explain, Webber argues an unconstitutional defect in pre-termination process occurred.

The Town's characterizations are somewhat inconsistent. The Town takes the position that the July 14 meeting was Webber's pre-termination opportunity to be heard and he received adequate process. (Def.'s Opp. Brief 6.) In moving for summary judgment, the Town contends May 21—the day Webber received the termination letter—was his "initial conference" to present his side of the story, and the letter was merely "written notice of the charges against him." (Def.'s Mot. Summ. J. 5.) While Fortier admittedly decided to terminate Webber prior to May 21, the Town maintains the termination was not final until August 5, 2010, when Fortier issued a written opinion upholding the decision. (Def.'s Mot. Summ. 7.) The hearings before the Select Board on September 14 and 16 were post-termination hearings.

The Town cites *Barber v. Inhabitants of Town of Fairfield*, 460 A.2d 1001 (Me. 1983) and *Frye v. Inhabitants of Town of Cumberland*, 464 A.2d 195 (Me. 1983) for the proposition that termination letters may be construed as mere suspension letters and therefore issued without any pre-termination process. (Def.'s Opp. Pl.'s Mot. Summ. J. 5-7.)

*Barber* involved a rather different situation. There, a police chief had been reappointed year to year with one-year contracts. The Town Manager composed several

9

letters warning the chief about misconduct that violated personnel rules. The chief was eventually dismissed. The first letter merely informed the chief he would not be appointed the following year. When the chief appealed to the town council, the town manager suspended him with pay. The second letter, after the town council refused to support the dismissal and the chief refused to resign, dismissed the chief with pay pending another hearing before the town council. *Barber*, 460 A.2d at 1003-04. Tellingly, after the chief got an attorney and town counsel got involved, the town rescinded the dismissal in a third letter a few days later and characterized the second letter as a suspension with pay. *Id.* at 1004. The Law Court held that the third letter "acted to correct the language used in the March 5 letter" and the chief was not prejudiced by the use of "dismissal" rather than "suspension." *Id.* at 1006.

In *Frye*, a police chief was suspended pending a month-long investigation into alleged violations of personnel regulations. At the conclusion of the investigation, the chief received a letter informing him he was terminated. 464 A.2d at 196.

Unlike *Barber*, where the police chief was merely not reappointed for another year and was provided with pay pending an opportunity to be heard, Webber was summarily dismissed without warning or pay and no subsequent correspondence acted to remedy the dismissal without notice and a hearing. The police chief in *Frye* had clear notice he faced termination. During the investigation, the chief was suspended for a month before finally receiving a termination letter. Webber, on the other hand, had no benefit of an investigation into the facts prior to the letter and Fortier admitted he was not apprised of all the facts before the May 21 letter. *Barber* and *Frye* do not support the Town's sweeping proposition.

10

Due process protections are flexible and the process required can vary, but Webber plainly failed to receive any pre-deprivation process. The May 21 letter clearly stated "this letter serves as your *notice of termination, effective immediately*" (emphasis added). The Town must take contorted positions to avoid the basic fact that the letter was, by its own terms, the effective termination.[11] The procedures thereafter cannot remedy the underlying constitutional violation. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (stating due process requires "an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest") (emphasis in original); *Moen v. Town of Fairfield*, 1998 ME 135, ¶ 9, 713 A.2d 321 (holding employee must be provided some warning and opportunity to explain prior to termination).

The circumstances surrounding Webber's license suspension—a result of a clerical error at the District Court—is exactly the "misunderstanding" contemplated by requiring pre-termination process. *Moen*, 1998 ME 135, ¶ 9, 713 A.2d 321. Based on the undisputed facts, Webber has established a pre-termination deprivation of process entitling him to summary judgment on this aspect of his due process claim.

### 3. Due Process: Impartiality and Post-Termination Process

The second component of Webber's due process argument touches on the impartiality of the process he received. Webber contends that the termination decision and subsequent hearings were tainted by bias and denied him due process. (Pl.'s Brief 27-29.) The Town raises two legal objections to Webber's claims of bias. First, the Town contends due process does not require a neutral arbiter. (Def.'s Opp. Pl.'s Mot. Summ. J.

---

[11] As noted above, the Town takes the position that the July 14 meeting was Webber's pre-termination opportunity to be heard. (Def.'s Opp. Brief 6.) This effectively reads the word "terminated" out of the letter. That the letter was intended to terminate Webber is further confirmed by Fortier's August 5 letter, which references the Town Manager's "decision, communicated to you by letter on May 21, 2010, to terminate your employment."

11

11-12.) Second, citing *Adelman v. Town of Baldwin*, 2000 ME 91, ¶¶ 6-7, 750 A.2d 577, the Town asserts even if Webber has a valid bias claim, he may not bring outside the 80B appeal, because the procedures under 80B will be adequate. (Def.'s Mot. Summ. J. 12.)

### i. Whether Bias Denies Due Process

It is true that at local boards, a predisposition held by a decision-maker does not necessarily deny a party due process. *See Lane Constr. Corp. v. Town of Washington*, 2008 ME 45, ¶ 30, 942 A.2d 1202. Yet a certain degree of bias can compromise a decision to the point that due process is denied. *See, e.g., Pelkey v. City of Presque Isle*, 577 A.2d 341, 343 (Me. 1990) (zoning board's decision violated due process where one of the new members of the board had previously been a vocal opponent of the project under consideration); *Mutton Hill Estates, Inc. v. Town of Oakland*, 468 A.2d 989, 992 (Me. 1983) (proceeding without the zoning relief applicant present, held before "admittedly biased opponents" of project, violated due process). In *Mutton Hill*, the Law Court upheld the Superior Court's determination not to remand to the board in light of a history of pervasive bias in the case as "a reasonable means of according Mutton Hill its due process rights." 468 A.2d at 993.

In arguing that bias can be compatible with due process, the Town primarily relies on *Regan v. School Administrative District 63*, which stated "an appreciable measure of inherent bias is acceptable even on the part of the final, or 'ultimate,' decisionmaker." 2009 WL 1325166, at *16 (D. Me. May 12, 2009) (citations omitted). The quoted language is taken out of context because *Regan* concerned the effect of post-termination process where bias tainted *pre-termination* process. *See id.* at *17 ("[The law] prohibit[s] process that permits someone with bias from serving as the final decision-making

12

authority on questions of fact and punishment."). Webber's allegations of bias by Jackie Bevins extend to the *post-termination* process before the Select Board, which was indeed the final decision-making authority on questions of fact and punishment. Thus, unlike *Regan*, the bias was not remedied by neutral process provided after the fact. *Cf. Chmielinski v. Massachusetts*, 513 F.3d 309, 318 (1st Cir. 2008) (finding no due process violation where there was no allegation that post-termination decisionmaker was biased). As a matter of law, Webber may pursue his bias claim under Section 1983.

Webber's factual basis for alleged bias and animus, largely concerning Jackie Bevins, is detailed above and need not be repeated here. The Town attempts to discredit Webber's claims by attacking Board Member Score's credibility. (Def.'s Opp. Brief 6-8.) While Webber does rely on Board Member Score to establish claims of impropriety, Score is not the sole basis for the allegations because several accounts are corroborated by Fortier. The following undisputed facts suggest impropriety: (1) Jackie Bevins confronted Fortier about Webber's OUI and asked what he would do about it, and Fortier originally claimed he would not do anything. (Def.'s S.M.F. ¶ 18.) (2) The Select Board had a packet of information during the September hearings that contained a poster with Webber's mug shot framed within an old-western style "WANTED" border. (Def.'s Resp. Pl.'s S.M.F. ¶ 80.) (3) Jackie Bevins had called Webber a "fucking crook" in Fortier's presence a number of times and made clear her desire for Fortier to fire Webber. (Def.'s Resp. Pl.'s S.M.F. ¶¶ 60-61.)

Based on the above, there are disputed issues of material fact as to whether bias tainted the process Webber received that preclude entry of summary judgment for either

party. Nevertheless, Webber's independent due process claim may be dismissed if the Rule 80B appeal provides adequate relief.

### ii.    The Adequacy of the Rule 80B Appeal

The viability of independent claims brought with a Rule 80B appeal is measured by whether the procedures and remedies available under Rule 80B are adequate. *Antler's Inn & Rest., LLC v. Dep't of Pub. Safety*, 2012 ME 143, ¶ 4, 60 A.3d 1248. ("When . . . a [municipal] . . . decision is reviewable pursuant to M.R. Civ. P. 80B . . . , that process provides the 'exclusive process for judicial review *unless it is inadequate.*'") (emphasis added) (citation omitted); *see also Colby v. York Cnty. Comm'rs*, 442 A.2d 544, 547 (Me. 1982) (concluding claims based on commissioner's failure to hold a hearing, excluding evidence, and reliance on an improper standard could be adequately reviewed by the court pursuant to Rule 80B procedure).

In *Adelman*, the petitioners appealed a municipal planning board's grant of a conditional use permit under Rule 80B. 2000 ME 91, ¶¶ 2-5, 750 A.2d 577. The petitioners also asserted an independent bias claim under 30-A M.R.S. § 2605, the municipal conflict of interest law. *Id.* ¶ 6. The Law Court held that the Superior Court did not abuse its discretion in dismissing the independent bias claim, emphasizing that the "allegations of bias arose from the Planning Board's conduct concerning the issuance of the conditional use permit." *Id.* ¶ 7. As a result, the 80B appeal of the permit denial would remedy any wrongful bias.

In *Kane v. Dep't of Health & Human Servs.*, the Law Court again affirmed the Superior Court's decision that the petitioner's independent claims for civil rights violations under Section 1983 were duplicative of her Rule 80C appeal. 2008 ME 185,

14

¶ 31, 960 A.2d 1196. In so doing, the court examined (1) whether the claim relies on the same factual allegations, and (2) whether the same relief is sought. *Id.*

More recently in *Gorham v. Androscoggin County*, the Law Court reversed dismissal of an independent due process claim under Section 1983 brought together with a Rule 80B appeal. 2011 ME 63, ¶ 25, 21 A.3d 115. While acknowledging the cases in which independent Section 1983 due process claims were dismissed as duplicative, the court focused on the fact that the petitioner, a corrections officer, was a public employee suspended without pay before he had the opportunity to be heard:

> Because this alleged deprivation of property occurred before the Commissioners' administrative hearing, we cannot, on this record, conclude that direct review pursuant to Rule 80B would provide an adequate remedy for Gorham's § 1983 claim. Accordingly, the court erred when it concluded that Gorham's § 1983 claim was not independent of his administrative appeal and should be dismissed.

*Id.* Notably, despite finding "[t]he underlying facts alleged for both claims were identical," the court concluded the separate due process claim was not duplicative of the Rule 80B appeal. *Id.* ¶ 6.

At a minimum, Webber's pre-termination due process claim survives under *Gorham* because Webber was terminated without pay and without any pre-termination process. Although the Town argues the remedy for Webber's allegations is merely more process, unlike *Adelman*, Webber's claim and potential remedy is not simply wrapped up in the grant or denial of a permit. Webber may be entitled to damages and attorney's fees not otherwise available under Rule 80B. M.R. Civ. P. 80B(i); *Polk v. Town of Lubec*, 2000 ME 152, ¶ 10, 756 A.2d 510 (damages may be pursued under Section 1983 because Rule 80B appeal does not permit such remedies); *see also Mercier*, 628 A.2d at 1056.

15

Webber is entitled to maintain his independent due process claim for damages in addition to the 80B appeal.

As stated above, the parties' motions for summary judgment on the post-termination due process aspect of Webber's independent claims must be denied because there are disputed issues of material fact regarding bias.

### D. Whether Webber's Termination was Arbitrary, Capricious, and Contrary to the Town's Personnel Rules

#### 1. The Scope of the Select Board Hearings

Town Manager Fortier's letters dated May 21 and August 5 cite only Rule 5.18(c), failure to report a license suspension, as the basis for termination. Webber first contends the Select Board improperly focused on the OUI rather than the rule and thus the suspension at issue. (Pl.'s Brief 17-18.)

The September 14 and 16 hearing transcripts indicate Board Members indeed focused on Webber's OUI. (R. 235-36, 304, 324, 347.) The Board had to be reminded several times that the OUI was not the rule violation at issue. Among others, there were reminders by Attorney Jon Gale, R. 237-38, and Chairman Tramuta. (R. 305.) ("[M]y point is Mr. Webber was not at all dismissed for [the OUI]. The section of the personnel rules is 5.18.") This, however, was not improper. The issue of Webber's communication with Fortier about the OUI was still relevant to Webber's overall credibility, a point Attorney Driscoll conceded during the September 16 hearing. (R. 331.) Inquiring as to whether Webber clearly communicated with Fortier about the OUI was not legal error.

#### 2. Webber Did Not Violate Rule 5.18(c)

Rule 5.18 provides "The department head or Town Manager shall be notified immediately (within 24 hours) in the event a driver's license is suspended or revoked for

any reason." Interpretation of a municipal enactment presents a question of law. *Nugent v. Town of Camden*, 1998 ME 92, ¶ 7, 710 A.2d 245.

Webber and Fortier dispute several key dates and the content of conversations between them.[12] In Webber's view, his license was officially suspended at 12 AM on May 18, 2010, and Webber had discussed the matter with Fortier on May 17. According to Fortier, he first informed Webber he knew about the suspension on May 18, when Fortier called to arrange to pick up Webber's town vehicle. In is undisputed Webber acknowledged the suspension during the conversation on May 18. (Def.'s S.M.F. ¶¶ 70-71; R. 1065.)

Even if one accepts Fortier's version of the facts, there was no violation. The issue is whether the Town Manager was notified of the suspension within 24 hours of it going into effect. Fortier had knowledge because Fortier confronted Webber and Webber acknowledged the suspension on May 18—within 24 hours of when the suspension went into effect at 12 AM.[13] The apparent purpose of the Rule supports this reading. During the hearing, Fortier stated that "liability concerns" formed the basis for retrieving the town vehicle from Webber on May 18. (R. 253.)

To the extent the Board rested their decision on the fact that Webber received information from the Ogunquit Police Department that he license was suspended and there was a warrant out for his arrest on May 14, 2010, this was error. Fortier apparently

---

[12] Complicating the dispute between Webber and Fortier is the fact that there were, in effect, two "suspensions": the first was an error because of the Dover-Foxcroft District Court's failure to docket Webber's not guilty plea, and the second was the "correct" suspension because it went into effect after the BMV hearing on May 17. The court acknowledged the mistake and removed the erroneous suspension and arrest warrant from Webber's record.

[13] Webber's acknowledgement of the suspension constituted adequate affirmative notice to Fortier. Rule 5.18(c) is intended to prevent employees driving without a valid license, not to punish an employee's failure to proactively confess their sins.

17

learned about the suspension on that day. (R. 250-53.)[14] Both Attorney Jon Gale and the Bureau of Motor Vehicles Webber had assured Webber that his license was valid, not suspended, and he could drive at least until the May 17 hearing. (Pl.'s S.M.F. ¶ 12; R. 23.) The Town cites no authority, and this court is aware of none, that holds a public employee can be terminated for violating a personnel rule when, as a factual and legal matter, the basis for the violation is false and contrary to assurances from the state. While not entirely clear from the Board's decision upholding Fortier's decision, it appears Webber's failure to inform Fortier on May 14 factored into the Board's credibility determination rather than the application of Rule 5.18(c). This is discussed further below.

Because Webber acknowledged the suspension at least as early as May 18, within 24 hours of the suspension going into effect after the BMV hearing, Webber did not violate Rule 5.18(c) and the Board's finding to the contrary was legal error.

### 3. The Select Board's Written Decision

Lastly, Webber takes issue with the Select Board's written decision, describing it as a "lawyerly" account composed by Town Counsel that did not reflect the actual deliberations and findings of the Select Board. (Pl.'s Brief 20.)

The Board was not required to compose its own detailed findings. *See Thacker v. Konover Dev. Corp.*, 2003 ME 30, ¶ 10 n.4, 818 A.2d 1013 (upholding Board action where decision consisted of modifications to a pre-printed checklist). Still, the Board was required to consider the evidence, apply the relevant rule, and reach a decision supported by the evidence. The Board could not abdicate its role by blindly deferring the Fortier's application of Rule 5.18(c).

---

[14] If liability concerns led Fortier to act on May 18, it is unclear why he failed to act when he first received notice of Webber's license suspension on May 14.

Statements by Board Members indicate that they erroneously considered whether Rule 5.18(c) was violated to be an issue of fact, and one of credibility in particular. Board Member Simonds highlighted the "inconsistencies" in the evidence, and resolved them in favor of Fortier. (R. 355.) ("I don't know why Tom would initiate a letter like this unless there was – unless there was some meat there.") Similarly, Board Member Bevins summed up the issue as "Johnny's [Webber's] word against Tom's [Fortier]." (R. 355.)

The Board's obligation, however, was to review the Town Manager's decision by applying the relevant rule. The Board's written decision appeared to turn entirely on whether Webber informed Fortier of the suspension on May 17. (R. 1065 ¶ 5.) The written decision ultimately concluded: "The Board resolves the conflict in statements in favor of Mr. Fortier. Therefore it appears that there was a violation of policy 5.18(c)." (R. 1065 ¶ 6.) Thereafter, citing the erroneous suspension Webber heard about on May 14, the Board continued:

> Although Mr. Webber personally believed either that the police department's information was wrong or that the warrant and suspension, if issued, were wrong, he should have taken the information seriously. In fact, there was a warrant out for him, and his license was suspended, even if later these things were shown to have happened in error. Given the seriousness of the information the fact that the police department was obviously concerned and the potential for his being arrested he should have let his supervisor know of the situation . . . Webber's decision not to contact Mr. Fortier on May 14 when he was contacted by the police department and to take no action then, makes it more credible, to us, that he did not notify Mr. Fortier of the suspension when they spoke on May 17.

(R. 1065 ¶ 7.) Based on the undisputed facts, credibility was irrelevant to whether Webber violated Rule 5.18(c). The matter does not turn on whether Webber informed Fortier on May 17 because is undisputed that the suspension did not become effective until midnight on the morning of May 18. Even adopting Fortier's version and assuming

19

that Webber only acknowledged the suspension during their later conversation on May 18, Fortier was informed of the suspension within 24 hours. There was therefore no violation; no rational construction of Rule 5.18(c) could support a contrary conclusion.

Board Member Cavaretta, who acknowledged that a plain application of the rule could not support the Town Manager's decision, made this most clear: "I think [Webber has] got some good lawyering and -- and the Town is getting stuck." (R. 347.) Yet Cavaretta again brought the issue back to Fortier's credibility, while acknowledging that "a technicality" seemed to prevent the Board from affirming the decision:

> [W]e're not standing behind [Fortier]. I have a real problem with that . . . I don't like the record of this case, but . . . I have a real problem not standing behind my managers, and I always have. Tom is right in the way he handled this when you take everything into consideration, yet a technicality is holding us up here.

(R. 356.) That "technicality" was a personnel rule that the Board, in reviewing the Town Manager's decision, was charged to apply. By framing the issue as one that merely considered Fortier's credibility and deferred to his application of the rule, the Board failed to carry out this duty and committed reversible error.

The Board's decision improperly applied the relevant rule, improperly deferred to the Town Manager, and was unsupported by competent evidence. *Gensheimer v. Town Of Phippsburg*, 2005 ME 22, ¶ 17, 868 A.2d 161. The decision must therefore be vacated and remanded for further proceedings.

## III. Conclusion

The Town's motion for summary judgment is hereby DENIED. Webber's motion for summary judgment is GRANTED IN PART and DENIED IN PART. Webber's Rule 80B appeal is hereby GRANTED. Because Webber did not violate Rule 5.18(c) and

20

Board Members failed to properly conduct Webber's post-termination hearings, the Select Board's decision must be reversed and remanded for further proceedings consistent with this order.

Date:  1/21/15

_____
Justice, Superior Court

CV-10-309

ATTORNEY FOR PLAINTIFF:
SUSAN B DRISCOLL
BERGEN & PARKINSON LLC
62 PORTLAND ROAD, SUITE 25
KENNEBUNK ME  04043

ATTORNEYS FOR DEFENDANT:
MICHAEL E SAUICER
ROSIE M WILLIAMS
THOMPSON & BOWIE
PO BOX 4630
PORTLAND ME  04112